UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| D. ARCHIE HALE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:10-CV-184 |
| v. | ) | |
| | ) | Chief Judge Curtis L. Collier |
| ABF FREIGHT SYSTEM, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## M E M O R A N D U M

In June 2010, Plaintiff D. Archie Hale ("Hale or "Plaintiff") filed suit in state court against Defendant ABF Freight System, Inc. ("ABF" or "Defendant") alleging age discrimination and hostile work environment claims under Tennessee law. After Defendant removed the case to this Court, Plaintiff amended his complaint to add claims under the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C §§ 623 *et seq*.

Before the Court is Defendant's motion for summary judgment (Court File No. 21), to which Plaintiff responded (Court File No. 23). Defendant replied to Plaintiff's response (Court File No. 27). In addition to these pleadings, the Court has considered depositions and other discovery materials filed by the parties. For the reasons discussed below, the Court will **GRANT** summary judgment for Defendant on all claims.


## I.      FACTUAL & PROCEDURAL BACKGROUND

### A.      Factual Background

When he commenced this lawsuit, Plaintiff Hale was sixty-two years old. Hale's relationship

with ABF, a trucking company based in Arkansas with a terminal in Chattanooga,[1] began in 1982, when ABF employed him as an Operations Supervisor at its Chattanooga shipping terminal. Hale left ABF two years later for a different job paying a better wage. In 1997, the ABF terminal branch manager for Chattanooga, Pam Laney,[2] contacted Hale to ask if he was interested in a job opening as an Operations Supervisor at ABF's Chattanooga terminal. Although they at that time had not previously worked together, Hale and Laney knew each other from working in the freight industry. Because the position with ABF offered a higher salary and better benefits than the job he held at the time, Hale expressed interest. After interviewing with Laney and ABF's Vice President for Operations, Hale was offered the position, which he accepted. When Hale accepted this job with ABF in 1997, he was fifty years old.

As an Operations Supervisor, Hale had a number of job responsibilities. He set up delivery routes, dispatched drivers, handled discrepancies in the freight,[3] called customers, supervised loading and unloading, ordered parts and supplies, and generally tracked different category of products to be picked up for delivery. Hale claims in the twelve years of his second stint at ABF he received only two complaints from customers (Court File No. 22, Hale Dep., p. 68), while interacting with 500-600 customers per week (*id.* at 152). Hale additionally claims he received a

---

[1] ABF is incorporated in Delaware, and has its principal place of business in Fort Smith, Arkansas.

[2] In 1997, Pam Laney went by Pam Houston. Following her marriage at some point between 1997 and the commencement of this lawsuit in 2009, she changed her name to Pam Laney. Throughout this opinion, she will be referred to as Pam Laney.

[3] For example, Hale managed overage, shortage, and damaged ("OS&D") freight. An overage occurred when the shipment included more freight than the shipping bill called for, and a shortage meant less freight than marked on the shipping bill. Hale was required to track shipments falling into any of these three categories.

2

number of commendatory letters from customers–and one from ABF's Vice President for Operations–for his work during this period (*id.* at 152-53), although he was unable to find any of these letters in his employee file when ABF produced it in discovery.

Generally, the record for the twelve-year period from when Hale began working with ABF (for the second time) in 1997 until problems arose in 2009 is sparse. It does include a number of Hale's annual employee reviews. On these reviews, Hale consistently receives a large number of "satisfactory" or "meets or exceeds expectations" marks, a smaller number of "needs improvement" marks, and no "unacceptable performance" marks.[4] Pam Laney remained Hale's supervisor throughout this period, and the written comments–presumably made by her–on these reviews suggest Hale has been a competent worker with room for improvement in certain areas. For example, the reviews for 2003, 2004, and 2005 all indicate Hale could do better interacting with customers, particularly on the phone. The 2006 review states only "[Hale] has done a better job of telephone courtesy. We have had a good year" (Court File No. 22, Ex. 23). The 2007 employee review includes no comments, and the 2008 comment reads simply: "[Hale] has done a good job of getting due date freight handled and making appts [sic] on time" (Court File No. 22, Ex. 21).

The tide turned, however, in 2009. By October 2009, ABF had terminated Hale's employment, and although the parties largely agree on what happened during this year, they disagree on how to interpret what happened. The first significant problem arose in February 2009. On February 23, 2009 Laney emailed Hale to express her disappointment that he had mishandled a

---

[4] The employee review forms for 1997 and 1998 allowed a reviewer one of three choices: "needs improvement," "satisfactory," or "not applicable." Review forms from 2000-2009 offered a reviewer four choices: "meets or exceeds expectations," "needs improvement," "unacceptable performance," or "not applicable." No employee review for Hale for 1999 was included. On all of Hale's reviews in the record, the "not applicable" box was occasionally checked.

3

number of deliveries during the week ending February 20. Specifically, Laney noted Hale had failed to deliver a "Timekeeper" shipment[5] on time, had made other untimely deliveries, and had generally not communicated effectively.[6] Laney then proceeded to file an Employment Discussion Report ("EDR") with her email attached. Hale, responding to Laney's email the same day, explained his rationale for each of the untimely deliveries, and claimed he had continued to fulfill all of his other job duties effectively, as he had for ten years. He also wrote to Laney he did his job "without complaining" and "usually without asking for any help," and he would welcome some positive feedback instead of "always hear[ing] how bad you are" (Court File No. 22, Ex. 3, p. 6).

In March 2009, the relationship between Hale and Laney further soured. Hale claims at some point in March 2009,[7] Laney asked him whether he was planning to retire soon, to which Hale replied he did not intend to retire for five years, at which point he would be sixty-seven years old, in order to draw the maximum amount of Social Security payments and to obtain Medicare (Court File No. 22, Hale Dep., pp. 154-55). Shortly thereafter, Hale claims, "all these letters and everything just kept coming at me" (Id. at 155).

Throughout March 2009, Laney communicated to Hale her disappointment with his job performance on a number of occasions. In many instances, Hale responded to these criticisms. On

---

[5] A "Timekeeper" shipment has a specific delivery date and time, and if ABF failed to deliver by that date and time, the customer was not required to pay for the shipment. The "Timekeeper" shipment program was part of an ABF marketing campaign (Court File No. 22, Hale Dep., pp. 68-69).

[6] The email also included a laundry list of other concerns Laney had with Hale's performance, and concluded by telling Hale she "continue[d] to have the same problems with you over and over" (Court File No. 22, Ex. 3, p. 3).

[7] Nothing in the record indicates when in March 2009 this conversation occurred.

4

March 15, 2009,[8] Laney reprimanded Hale over email for, on March 13, failing to call a customer before sending a driver without calling to confirm the customer's availability. The customer was in fact unavailable, and in a March 17 response, Hale acknowledged that by failing to call ahead, he had "missed this one" (Court File No. 22, Ex. 5, p. 2). Also on March 15, Laney emailed Hale to express frustration with a delivery made outside the scheduled delivery window and his failure to call the customer personally regarding the changed delivery time. Hale responded he did not want to call the customer before 8 am in the morning and the driver had called the customer at 8:30 am. Laney replied such conduct was inappropriate because Hale had scheduled the delivery originally, telling him she "cannot believe you would treat a customer like this" (Court File No. 22, Ex. 5, p. 2).

In addition to the incidents already recounted, mid-March 2009 saw no fewer than five altercations between Laney and Hale. First, Laney chastised Hale for failing to follow the proper protocol for "on-hand"[9] shipments despite her having instructed him to do so more than fifty times previously (Court File No. 22, Ex. 6, p. 3). Hale replied by email explaining he believed he had taken the right action but would nonetheless conform in the future (*id.* at p. 1). In his deposition, he claimed he was in fact not made aware of the proper protocol until March 18, 2009 (Court File No. 22, Hale Dep., p. 98). Second, Laney criticized Hale for improperly coding shipments "short" in order to prevent the shipment appearing as a "failed delivery." In his email response to Laney,

---

[8] Laney's email to Hale on March 15, 2009 also included an earlier email Laney had sent to Hale and Mark Stewart, another ABF Operations Supervisor, emphasizing the importance of calling ahead to customers who had scheduled their deliveries through the General Office in Arkansas (Court File No. 22, Ex. 4, p. 2).

[9] Putting a shipment "on-hand" meant to store it at the shipping terminal while informing the appropriate customer there was a problem with the shipment.

5

Hale claimed he had done this for "economic reasons" (Court File No. 22, Ex. 7, p. 1); Hale subsequently claimed Laney knew about it and in fact supported this practice (Court File No. 22, Hale Dep., p. 102) ("On a situation like that, I had been told in the past by [Laney], do whatever it takes to make sure all your freight is delivered and shows a delivery time, whatever means it takes."). Third, Laney, prefacing her email by stating she continued "to be amazed that you are ignoring instructions that I have given you on how you are supposed to be doing things" (Court File No. 22, Ex. 9, p. 1), faulted Hale for failing to update the "equipment pool" manifests. Hale, in an email response to Laney, acknowledged he had missed a "U-Pack" (*id.*); in his deposition, Hale further claimed he had only made a mistake on one out of fifty trailers.

Fourth, Laney, referring back to an email she had written to Hale and Stewart on February 5, 2009 in which she had instructed them to limit their usage of the internet to work-related matters, reprimanded Hale for using the internet excessively and for personal reasons. Hale admitted he had "no excuse" for his excessive use, explaining that while he tried to limit it to his lunch break, he had "surpassed that" (Court File No. 22, Ex. 12).[10] Finally, Laney criticized Hale for failing to keep properly stocked an area in the back of the shipping terminal which ABF rented to vendors that serviced ABF trucks. Hale admitted, in email to Laney, he was "guilty of trusting others to know what their jobs were," promised he would not "make that mistake again," and further promised to perform a monthly inventory of the area (Court File No. 22, Ex. 13. p. 1).

Matters did not improve in April and May 2009. On May 4, Laney filed another EDR when Hale failed to fax the preventative maintenance log to the maintenance manager on April 30. Laney

---

[10] Hale has submitted an affidavit from another ABF employee, James Watt, in which Watt notes he observed Laney "surfing the Internet during work hours on multiple occasions" (Court File No. 23, Watt Aff., ¶ 10).

had to send the log herself, and in the EDR, she told Hale she could not "keep going behind you to make sure you keep doing your job" (Court File No. 22, Ex. 15, p. 1). Hale admitted he had made a mistake, and, in his deposition, claimed it was the first time in twelve years he had made such a mistake (Court File No. 22, Hale Dep., p. 133). At the end of May 2009, Laney disapproved of Hale's failure to communicate to her that a driver was taking a vacation day, and asked Hale why he had lied to her and blamed Stewart, the other Operations Supervisor. Hale, explaining "[i]t will not happen again," insisted he had not lied (Court File No. 22, Ex. 16, p. 1), and stated in his deposition the whole matter had been a miscommunication that was subsequently cleared up (Court File No. 22, Hale Dep., p. 134).

In June 2009, two important events occurred. First, Hale was on a one-week vacation in the beginning of June when he received a phone call from Laney. In that phone call, according to Hale, Laney told him she had to lay off a supervisor. When Hale told her he had more experience than the other supervisors, she allegedly asked whether, in light of his upcoming birthday,[11] he was considering retirement. Hale then reminded Laney of their conversation in March 2009 where he indicated he intend to work another five years. When Laney allegedly then informed Hale she would have to lay him off, Hale suggested they have a conversation when he returned from his vacation. That conversation never occurred. The record also indicates Mark Stewart, another ABF Operations Supervisor, volunteered to take the lay-off as he wanted to return to school. In fact, no supervisor was laid off at that time.[12]

---

[11] Nothing in the record indicates when Hale's birthday is.

[12] In June and July 2009, ABF closed a shipping terminal in Calhoun, Georgia. A number of employees, including supervisors, from the Calhoun terminal were apparently terminated during this time. Hale claimed in his deposition his work load increased after the closure of the Calhoun

The second important event in June was another EDR filed by Laney in response to Hale's conduct. After returning from vacation, Hale had started discussing his work-related problems, including the criticism he had received from Laney, with several drivers. The drivers had subsequently approached Laney directly. The EDR instructed Hale to cease discussing the personal communications he had with Laney with other ABF employees because to do so was "unprofessional and [a] violation of company policy" (Court File No. 22, Ex. 17, p. 1). Hale admits he told drivers he was being scrutinized, and asked their help to make sure everything ran smoothly (Court File No. 22, Hale Dep., pp. 136-37).

Although neither party calls particular attention to it in their briefs, June 2009 is also when Hale received his annual employee review for 2009. Issued on June 11, 2009, the review is largely consistent with his previous reviews in that Hale was marked "meets or exceeds expectations" in most of the review categories, and "needs improvement" in others. The supervisor comments, signed off on by Laney, indicate Hale is "making better decisions," and communicating more effectively (Court File No. 22, Ex. 20, p. 2). The comments further urge Hale to "continue to do everything you are doing now and not stop as you have done in the past," to adopt more of a "'can-do' attitude with customers," and to "go the extra mile" (*id.*).

Curiously, the record remains silent from mid-June 2009 until the beginning of October 2009. On October 2, 2009, Hale dispatched a driver to two different locations without having confirmed the deliveries with the customers first. He had called, but not been able to reach, the

terminal (Court File No. 22, Hale Dep., p. 150 & 157).

customers. Hale admits it was a mistake to have done this[13]–and admitted the mistake in his filing to the Equal Employment Opportunity Commission ("EEOC")–but also claims he was "trying to take care of my customers" (Court File No. 22, Hale Dep., pp. 138-40). On October 5, Laney, after having confirmed with the drivers what had occurred, terminated Hale. After his termination, Hale called ABF's human resources department and suggested they inquire into certain aspects of Laney's conduct, including her personal use of ABF assets[14] and her prescription drug use. Hale did not, in this phone call, mention age discrimination (*id.* at pp. 144-46).

The record is unclear on whether anyone replaced Hale as an Operations Supervisor. Hale said he did not know whether ABF had hired a replacement Operations Supervisor. He was aware ABF had hired "two new ladies" and a "new salesman" (*id.* at p. 22). Hale did not know the age of the salesman. He estimated the age of the two woman–one of whom he believed was named Sue–as "forty-something" and "in her early fifties" (*id.* at p. 23). An ABF truck driver who was employed throughout the period in question, before leaving the company on May 31, 2010, stated Hale was replaced "by a woman named Sue, who appeared to me to be younger than Mr. Hale" (Court File No. 23, Watt Aff., ¶ 11).

Finally, the parties call to the Court's attention two other pertinent facts, neither of which

---

[13] There appears to be a dispute regarding whether Hale's mistake resulted in unnecessary overtime for a driver. The driver apparently worked more than eight but less than ten hours. As Hale explained in his deposition, ABF employs two types of drivers. One type–the "eight-hour bid man"–works five eight-hour days. The other type–the "ten-hour bid man"–works four ten-hour days. The record does not indicate which type of driver Hale dispatched for this delivery on October 2, 2009.

[14] In his deposition, Hale apparently concedes Laney's personal use of ABF assets had been approved by the company, even though such use was, in his opinion, economically wasteful (Court File No. 22, Hale Dep., pp. 145-46).

can be fit easily into the foregoing chronological narrative. First, ABF emphasizes that Hale, when he began his employment with the company, received a copy of ABF's Code of Conduct. This Code, which Hale admits he signed but did not read or closely review (Court File No. 22, Hale Dep., pp. 62-63), set forth a procedure for reporting illegal or unethical conduct to ABF's general counsel. Hale acknowledges he was aware of this procedure, but never utilized it to report he was being harassed or discriminated against because of his age. Second, Hale submits an affidavit from James Watt, who worked as a truck driver at ABF from 1985 until May 2010. Watt claims Laney "began focusing a stream of criticism on Mr. Hale" at some point after June 2009 (Court File No. 23, Watt Aff., ¶ 4). Watt observed Laney "criticized [Hale] harshly in my presence for trivial things. It was obvious that she was trying to force him to leave" (*id.*). Indeed, Watt claims Laney at one point told him: "[Hale] is going to leave here when he is 62. I am going to see to it. He has been here long enough, and he is going to go on his social security" (*id.* at ¶ 6). Watt's affidavit does not indicate when or where this statement was made to him.

## B. Procedural Background

Following his termination, Hale took two legal actions. First, he filed a charge with the EEOC. Second, he filed suit against ABF in the Chancery Court of Hamilton County, Tennessee, alleging age discrimination and hostile work environment claims under Tennessee law. ABF removed to this Court on diversity grounds. After removal, Hale received from the EEOC his right to sue letter. He then amended his complaint to add age discrimination and hostile work environment claims under federal law. After the close of discovery, ABF moved for summary judgment on all claims.

10

## II.     STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-cv-63, 2009 WL 3762961, at *2-3 (E.D. Tenn. Nov. 4, 2009) (explaining the Court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should grant summary

judgment. *Id.* at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III. ANALYSIS

Hale advances two distinct claims. First, he contends ABF terminated him on the basis of his age in violation of the Tennessee Human Rights Act ("THRA"), Tenn. Code. Ann. §4-21-401, and the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 623 *et seq.* Second, Hale claims ABF violated these two laws by subjecting him to a hostile work environment in an effort to compel him to retire or quit. The analysis for these THRA claims is identical to Hale's claims under the ADEA. *Jones v. Memphis Light, Gas and Water Div.*, 346 Fed.App'x. 38, 43 (6th Cir. 2009); *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 620 (6th Cir. 2006) ("We apply the same analysis to age-discrimination claims brought under the THRA as those brought under the ADEA."); *Bohannon v. Baptist Memorial Hospital-Tipton*, No. 08-2220, 2010 WL 185648 (W.D. Tenn. May 7, 2010). Accordingly, the Court will consider Hale's ADEA and THRA claims for age discrimination, before turning to his claims, under the same two laws, for a hostile work environment.

### A. Age Discrimination Claim

Both the ADEA and THRA prohibit employers from discriminating against an employee because of that employee's age. 29 U.S.C. § 623(a); Tenn. Code. Ann. §4-21-401(a)(1). To prove age discrimination, a plaintiff must show a violation by either direct or

indirect–circumstantial–evidence. *Geiger v. Tower Automotive*, 570 F.3d 614, 620 (6th Cir. 2009).[15]

Direct evidence is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's action." *Id.* (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003)). By contrast, circumstantial evidence "is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Id.* Because the parties here disagree whether the relevant evidence is direct or circumstantial, and because a different analytical framework applies to direct and to circumstantial evidence, *see Scott v. Potter*, 182 Fed. App'x. 521, 525 (6th Cir. 2006), the Court first considers the nature of the evidence before it.

### 1. Direct Evidence

To constitute direct evidence, evidence must leave little doubt in the factfinder's mind age discrimination occurred. *Minadeo v. ICI Paints*, 398 F.3d 751, 763 (6th Cir. 2005) ("Direct evidence is evidence that proves the existence of a fact without requiring any inferences.") (quoting *Rowan v. Lockheed Martin Energy Sys.*, 360 F.3d 544, 548 (6th Cir. 2004)). Statements not made by decisionmakers, or statements made by decisionmakers "unrelated to the decisional process itself cannot suffice to satisfy the plaintiff's burden" as direct evidence. *Geiger*, 570 F.3d at 621 (quoting *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998)) (internal alterations omitted). In addition to being made by a decisionmaker as part of the decisional process, a statement–to constitute direct evidence–must clearly evince the intent of discriminating on the basis of age. *Scott*, 182 Fed. App'x. at 526 ("'Only the most blatant remarks, whose intent could be nothing other than

---

[15] Whether by direct or indirect evidence, a plaintiff must prove "age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Financial Servs.*, 129 S.Ct. 2343, 2351.

to discriminate on the basis of age,' satisfy this criteria.") (quoting *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989).

Statements invoking retirement do not, without more, constitute direct evidence of age discrimination. *Id.* In *Scott*, the Sixth Circuit found the employer's statement to the plaintiff "Why don't you retire and make everyone happy" did not amount to direct evidence of age discrimination because the term "retire" did not directly refer to a person's age.[16] The plaintiff in *Scott* also failed to show direct evidence because he failed to establish the employer had used the term "retire" as a proxy for age to express discriminatory bias. *Id.* ("For example, an employer might routinely use a facially innocuous term like 'experienced' to refer to an older worker in a disparaging way. If there was evidence of such routine usage, then a statement like 'Let's fire him; he's too experienced' would be direct evidence of age discrimination.").

Here, Hale argues the record contains direct evidence of age discrimination. He focuses on Laney's questions to him about retirement, and the statement Laney allegedly made to James Watt that "[Hale] is going to leave here when he is 62. I am going to see to it. He has been here long enough, and he is going to go on his social security" (*id.* at ¶ 6).[17] ABF contends *Scott* forecloses

---

[16] As the *Scott* court explained, an older worker may have been a recent hire, and a younger worker may have been on the job for a number of years. Although younger workers typically do not retire, while older workers typically do, "it is this 'typicality' rather than 'identity' which requires that an inference be drawn before 'Why don't you retire' can become evidence of a discriminatory animus like 'Why don't you retire; you're too old.'" *Scott*, 182 Fed. App'x. at 526.

[17] Hale also argues "temporal proximity of events can constitute direct evidence of a causal connection between a protected activity and an adverse employment action" (Court File No. 23, p. 18). This argument finds no support in Sixth Circuit or Tennessee caselaw. The cases Hale cites in support of his argument–*Smith v. City of Salem*, 378 F.3d 566, 571 (6th Cir. 2004); *MacDonald v. United Parcel Serv.*, 430 Fed. App'x. 453 (6th Cir. 2011); *Sykes v. Chattanooga Housing Authority*, 343 S.W.3d 18, 30-31 (Tenn. 2011)–do not address the definitional question of what constitutes direct evidence in an age discrimination case.

14

Hale's argument, and the Court agrees.

Laney's questioning Hale in March and June 2009 about his retirement plans is simply too attenuated to constitute direct evidence of age discrimination. Inquiring about Hale's retirement plans is even less direct than the employer's rather explicit statement in *Scott*: "Why don't you retire and make everybody happy," *Scott*, 182 Fed App'x. at 526–a statement the Sixth Circuit held did *not* constitute direct evidence of age discrimination. Watt's alleged statement to Laney about Hale also falls short of the direct evidence standard.[18] First, there is no indication Laney's statement is related to the actual decisional process regarding whether ABF should continue to employ Hale. *See Geiger*, 570 F.3d at 621. Moreover, to get from any aspect of Laney's alleged statement to age discrimination requires an inferential step, thereby removing it from the category of direct evidence. When Laney allegedly told Watt that Hale would leave when he was sixty-two, or that he had been at ABF "long enough," or that Hale was going to go on Social Security, none of these statements directly linked these actions to Hale's age. Instead, Laney would have had to have said she would see to it Hale left ABF *because* he was sixty-two, or, more blatantly, *because* he was too old. *Scott*, 182 Fed. App'x. at 526 (quoting *Carter*, 870 F.2d at 582). Accordingly, the Court concludes Hale has not shown direct evidence of age discrimination.

### 2. Circumstantial Evidence

Because Hale is unable to show direct evidence of age discrimination, he must satisfy the burden shifting analysis for circumstantial evidence under *McDonnell-Douglas Corp. v. Green*, 411

---

[18] As an initial matter, the Court is troubled by the lack of any date, time, or place associated with Laney's alleged statement to Watt. Given the summary judgment stage of the proceedings, however, the Court will assume Laney did in fact make the statement as quoted to Watt at some point in 2009.

U.S. 792 (1973). To establish an age discrimination claim under this framework, the plaintiff must first demonstrate a *prima facie* case by proving 1) he was a member of the protected class; 2) he was discharged; 3) he was otherwise qualified for the position held; and 4) he was replaced by someone outside of the protected class. *Geiger*, 579 F.3d at 622. Once the plaintiff establishes a *prima facie* case, the burden of production–but not the burden of persuasion–shifts to the defendant to articulate a nondiscriminatory reason for the adverse employment action. *Harris v. Metro. Gov't of Nashville and Davidson Cnty.*, 594 F.3d 476, 485 (6th Cir. 2010). When the defendant makes this showing, the burden of production shifts back to the plaintiff to show the defendant's proffered reasons was "mere pretext for intentional age discrimination." *Id.*

The parties agree two elements of the *prima facie* case are satisfied; the other two elements are in dispute. Hale, sixty-two years old at the time of the alleged discrimination, is within the protected class,[19] and he was discharged. On the third element, ABF argues Hale, in failing to meet Laney's legitimate job expectations, was not qualified for his job as an Operations Supervisor. Hale disagrees. On the final element, ABF contends Hale has not shown he was replaced by someone outside the protected class. Hale offers a twofold response. First, he claims the record indicates at least a genuine issue of material fact on this point, as it appears he was replaced by a woman named Sue who appeared younger than Hale (*see* Court File No. 22, Hale Dep., p. 154; Court File No. 23, Watt Aff., ¶ 11). Alternatively, Hale argues he can satisfy this element even without actual knowledge he was replaced by an individual outside the protected class. Although it is a close call, the Court concludes Hale has established a *prima facie* case of age discrimination.

---

[19] A plaintiff must be at least forty years old at the time of the alleged discrimination. *Harris*, 594 F.3d at 485.

An employee is qualified to do his job if "he was doing his job well enough to meet his employer's legitimate expectations." *Dews v. A.B. Dick. Co.*, 213 F.3d 1016, 1023 (6th Cir. 2000). In support of its argument that Hale is not qualified for his position, ABF relies heavily on *Strickland v. Fed. Express Corp.*, 45 Fed.App'x. 421 (6th Cir. 2002). In *Strickland*, the plaintiff's age discrimination claim failed in part because she could not show she was qualified for her job as a Senior Training Specialist. *Id.* at 424. Specifically, Strickland had failed to "present evidence at least contesting Federal Express's claims regarding her inadequacy, reasonably contemporaneous with the adverse employment action." *Id.* Indeed, the only evidence Strickland appears to have offered were awards given to her before the arrival of the supervisor who then fired her. *Id.*

The set of facts in this case is quite unlike *Strickland*, and is certainly sufficient to create a genuine issue of material fact regarding whether Hale was qualified. In almost every instance where Laney criticized Hale's on-the-job performance, Hale provided a contemporaneous email response explaining the rationale behind his conduct. Moreover, in the midst of some of the most heated exchanges between Laney and Hale, Laney, in mid-June 2009, completed a generally positive annual review for Hale, noting he was "making better decisions," and communicating more effectively (Court File No. 22, Ex. 20, p. 2). Where Strickland's proffered evidence suffered from "staleness," *Strickland*, 45 Fed.App'x. at 424, Hale's evidence contesting ABF's claims of his inadequacy is reasonably contemporaneous with his adverse employment action. Accordingly, the Court finds Hale has satisfied the "otherwise qualified" prong of the *prima facie* case.

The harder issue is whether Hale satisfies the final prong of the *prima facie* case–that he was replaced by someone outside the protected group. The record on this point is simply unclear. ABF argues Hale cannot establish this element, and Hale's evidence is admittedly scanty. He does not

know whether ABF replaced him directly, and his personal knowledge is limited to speculation that a man and two women–one named "Sue"–were hired after his termination. Hale further speculates the two women were both within, not outside, the protected class (*see* Court File No. 22, Hale Dep., p. 23). James Watt's affidavit is equally uncertain; Watt claims Hale was replaced "by a woman named Sue, who appeared to me to be younger than Mr. Hale" (Court File No. 23, Watt Aff., ¶ 11). Even construing this statement in the light most favorable to Hale, "Sue" could be younger than Hale, and yet still outside the protected class–a reading consistent with Hale's own deposition testimony.

Cognizant of this uncertainty, Hale offers three additional arguments explaining why he has satisfied this final prong of the *prima facie* case.[20] First, Hale argues an employer cannot "avoid liability by changing the job title or by making minor changes to a job indicative of an attempt to avoid liability" (Court File No. 23, p. 20) (quoting *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1465, n.10 (6th Cir. 1990). Second, Hale contends a plaintiff can establish this final element by showing the position remained open.[21] Finally, Hale claims Laney and ABF, by forcing Hale to leave because he had reached sixty-two, in essence imposed a mandatory retirement age, in which case no proof of replacement by someone outside the protected class is required. *See Lafferty v. Coopers*

---

[20] ABF does not address these arguments in its briefs.

[21] In support of this argument, Hale cites *Freeman v. Potter*, 200 Fed.App'x. 439, 451 (6th Cir. 2006) (Clay, J., dissenting). The Court is unable to find anything in either the majority opinion or Judge Clay's dissenting opinion that supports Hale's argument. As the majority opinion indicates, the sole issue in *Freeman* was whether the plaintiff had "offered sufficient evidence to create a genuine issue of material fact that he suffered an adverse employment action." *Id.* at 442 (majority opinion). Judge Clay briefly mentions in *Freeman* the possibility, in a failure to hire case, of satisfying the fourth prong of the *prima facie* case by showing the position remained open. *Id.* at 452 (Clay, J., dissenting). But the case before the Court is not such a case.

*& Lybrand*, 841 F.2d 1126, 1988 WL 19182, at *3 (6th Cir. 1988).

Taken together, the uncertainty surrounding the age of Hale's replacement–if he was indeed replaced–and the factual questions underlying Hale's additional legal arguments regarding why he need not show he was replaced[22] leave the Court unable to definitely determine whether in fact Hale has satisfied the fourth prong of his *prima facie* case. The Court, however, will give Hale the benefit of the doubt at this juncture in the proceedings, and presume he has satisfied his requirement to demonstrate a *prima facie* case. Under the *McConnell-Douglas* framework, the burden of production then shifts to ABF to prove a legitimate, nondiscriminatory rationale for the adverse employment action.

### 3. Pretext

Neither party disputes that ABF has carried its burden of offering a legitimate, non-discriminatory reason for discharging Hale: ABF discharged Hale for failure to perform his job duties adequately.[23] Thus, the burden of production then shifts back to Hale to demonstrate this facially nondiscriminatory reason in fact masks discriminatory animus.[24] To establish the

---

[22] For example, Hale's argument he need not show he was replaced because he was subjected to a mandatory retirement age of sixty-two rests on the factual question whether he was indeed subjected to a mandatory retirement. Viewed in a light most favorable to Hale, Watt's affidavit recounting Laney's statement that Hale was "going to leave here when he is 62" (Court File No. 23, Watt Aff., ¶ 6) provides enough factual support for this legal theory to survive a summary judgment motion.

[23] To be sure, the parties would characterize the rationale for Hale's termination differently. ABF refers to "multiple documented issues" leading up to Hale's eventual discharge in October 2009 (Court File No. 22, p. 14). Hale, while acknowledging the explicit reason for his termination was the failure to call ahead to confirm deliveries, describes this reason as "invented and suspicious" (Court File No. 23, p. 11). Nevertheless, they both agree the explicit reason given for Hale's discharge was legitimate and non-discriminatory.

[24] At this point in the analysis, "the burden of producing evidence of 'pretext' essentially merges with the burden of persuasion, which always lies with the plaintiff." *Gragg v. Somersett*

employer's stated reason for the termination was pretextual, a plaintiff must show it "(1) has no basis in fact, (2) did not actually motivate the defendant's conduct, or (3) was insufficient to warrant the challenged conduct." *Bender*, 455 F.3d at 624 (quoting *Wexler*, 317 F.3d at 576).

The first avenue of establishing pretext is generally available when a plaintiff can show the reasons for the employer's actions were factually false. *See Johnson v. Interstate Brands Corp.*, 351 Fed.App'x. 36, 41 (6th Cir. 2009); *see also Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir.1998) ("[T]he key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse action."). Hale claims his termination has no basis in fact because Laney miscalculated the amount of time taken by the drivers in October 2009. This argument fails because the underlying reason given to Hale for his termination was his failure to call to confirm the readiness of the customers to accept a delivery–a mistake he has admitted to (Court File No. 22, Hale Dep., pp. 138-40). There is thus no factual dispute this event occurred.

The second avenue to establishing pretext is available to a plaintiff "by showing circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir.1994). Hale argues his discharge was motivated by illegal age-related discrimination, and not by the stated reasons given in October 2009. He further claims Laney, by failing to lay off Mark Stewart, who had volunteered for a lay-off in June 2009, and waiting until October to terminate Hale, was "seeking to terminate Mr. Hale for any reason at all" (Court File No. 23, p. 23). This argument fails for a number of reasons. First, Hale has only a subjective belief age motivated ABF's decision to terminate him, and Hale never referred to age-related discrimination at any point before this lawsuit,

---

*Technical Coll.*, 373 F.3d 763, 768 (6th Cir. 2004) (citation omitted).

including in his phone call to ABF's human resources department after his discharge. Second, Hale never heard ageist or age-related comments from Laney apart from her questions relating to his possible retirement. Third, Hale's claim Laney purposely abstained from discharging Stewart in June 2009 so she could terminate Hale in October 2009 ignores the fact Laney terminated a younger Operations Supervisor–Hale estimated he was thirty-three or thirty-four years old–at the Calhoun terminal in June or July (Court File No. 22, Hale Dep., pp. 157-58). Had ABF indeed sought to terminate older Operations Supervisors as Hale claims, he would have lost his job then. Finally, the record is replete with job-related, not age-related, criticisms of Hale's on-the-job conduct. Even construing all the evidence in the light most favorable to Hale, as the Court must at this summary judgment stage, Hale is unable to establish his termination is more likely the result of illegal age-related discrimination than a failure–after multiple reminders and other concerns about job performance–to call ahead and confirm deliveries in October 2009.

To show a stated reason for discharge was in fact insufficient to warrant the discharge–the third and final avenue to making out a pretext claim–the plaintiff must typically provide "evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Manzer*, 29 F.3d at 1084. Hale's argument on this third point takes a different tack: he asserts the stated reason for his termination was insufficient to warrant discharge because of ABF's policy to check up on customers with unconfirmed freight pick-ups (Court File No. 23, p. 23) (citing *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 545).[25] The record

---

[25] Hale's citation of *Imwalle* is puzzling here, because that case dealt with a plaintiff advancing a pretextual claim of retaliation under the second of the three avenues. *See Imwalle*, 515 F.3d at 546.

reveals little, if any, factual support for Hale's argument, and even if there were more factual support, it is not clear Hale would be able to satisfy the third prong of the pretext analysis with this argument. Moreover, Hale offers no evidence of other employees, whether in the protected class or not, who engaged in substantially identical conduct but were not fired. Accordingly, the Court concludes Hale cannot establish ABF's stated reason for terminating him was pretextual under the third avenue.[26]

Because Hale has not rebutted ABF's legitimate, non-discriminatory reason for his termination, summary judgment for ABF on Hale's age discrimination claims under the ADEA and THRA is appropriate.

### B.    Hostile Work Environment Claim

Hale also claims he was subjected to a hostile work environment, which may be advanced under the ADEA.[27]   *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834-35 (6th Cir. 1996).   A plaintiff must establish four elements:

> 1. The employee is 40 years old or older;

---

[26] Hale also argues ABF's shifting reasons for terminating him calls into question the credibility of ABF's proffered justification for his termination.   Although Hale is correct that "an employer's changing rationale can be evidence of pretext," *see, e.g., Asmo v. Keane, Inc.*, 471 F.3d 588, 596 (6th Cir. 2006) (quoting *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1167 (6th Cir.1996)), Hale fails to point to anything in the record indicating ABF has in fact changed the rationale for terminating him.   While it is true ABF has offered additional evidence of Hale's inadequate job performance, it has never claimed the rationale for his termination was anything other than the failure to call before dispatching drivers, in light of his previous mistakes, in October 2009.

[27] Hale also advances his hostile environment claim under the THRA, which is analyzed identically to the THRA.  *See Bender*, 455 F.3d at 620.   In his brief, Hale cites only federal law in support of his hostile environment claim.

22

2. The employee was subjected to harassment, either through words or actions, based on age;

3. The harassment had the effect of unreasonably interfering with the employee's work performance and creating an objectively intimidating, hostile, or offensive work environment; and

4. There exists some basis for liability on the part of the employer.

*Id.* The hallmarks of a hostile work environment are a workplace "permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)). In evaluating a hostile work environment claim, a court should examine "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23. Finally, "[b]oth an objective and a subjective test must be met: the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive." *Brownee v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000).

Hale predicates his hostile work environment claim on eleven comments made, over email, by Laney to Hale from February 23, 2009 to March 22, 2009. Hale claims Laney threatened his job and insulted his performance eight times during this period (Court File No. 23, p. 24). The comments Hale cites include "You have let me down," "Why are you doing things incorrectly," "You were clueless," "You continue to ignore what I tell you," and similar disparaging remarks. None of the comments cited in Hale's brief refers to his age.

Although these comments may well have upset Hale, they fail to establish a hostile work environment claim. Hale must establish the allegedly abusive comments were made on account of his age. Yet none of the comments Hale recounts in his brief, nor any other of the multiple–and admittedly uncharitable–communications made by Laney in the record demonstrate ridicule or insult based on Hale's age. Hale has fallen victim to the false syllogism identified by the Sixth Circuit in *Crawford*: "A) My coworkers hate me; B) I am old; C) My coworkers hate me because I'm old." *Crawford*, 96 F.3d at 836. The plaintiff's claim in *Crawford* failed in part because she could only point to two comments evincing age-based animus. *Id.* Hale, by contrast, can point to none. Accordingly, summary judgment for ABF on Hale's hostile work environment claim is proper.

## IV.    CONCLUSION

For the reasons discussed above, the Court will **GRANT** Defendant's motion for summary judgment (Court File No. 21).[28] There being no other issues in this case, the Court will **DIRECT** the Clerk of Court to **CLOSE** this case.

An Order shall enter.

/s/_____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

[28] Because ABF, with the Court's permission, filed a revised motion for summary judgment (Court File No. 21), the Court does not consider arguments made by ABF in its summary judgment motion filed on September 6, 2011 (Court File No. 17), which it will instruct the Clerk of Court to terminate.